IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMANTHA ANN WHEELER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 23-148-E |

O R D E R

AND NOW, this 11th day of September, 2024, upon consideration of the parties' cross-motions for summary judgment, the Court, after reviewing the Commissioner of Social Security's final decision denying Plaintiff's claim for child's disability insurance benefits ("DIB") under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and her claim for supplemental security income ("SSI") under Subchapter XVI of the Act, 42 U.S.C. § 1381 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)).  *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence,

nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]     Plaintiff argues that the Administrative Law Judge ("ALJ") erred by failing to find that her mental impairments met or equaled Listings 12.04 and 12.06, in formulating her residual functional capacity ("RFC"), and in ultimately finding that she is is not disabled.  The Court disagrees, finds that substantial evidence supports the ALJ's findings, and therefore will affirm.

While Plaintiff's brief is comprehensive, it primarily sets forth evidence on which she purports to rely in support of her position that she is disabled, apparently inviting the Court to draw its own conclusions from the record evidence.  However, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently.  *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705).  Plaintiff highlights evidence that she argues leads to a contrary conclusion, but "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision."  *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009).  Here, substantial evidence supports the ALJ's determinations as to the listings and Plaintiff's RFC, as he himself discussed at length.

The ALJ's decision was thorough, and he adequately explained his findings in light of Plaintiff's subjective testimony, the objective medical evidence, Plaintiff's treatment history, her activities of daily living, including her significant volunteer work, and the various medical opinions.  He emphasized, for instance, that Plaintiff's treatment had been conservative and that her symptoms had been typically controlled with medication management.  He also noted that her mental status examinations had been largely unremarkable.  Plaintiff takes issue with this characterization, arguing that the ALJ disregarded parts of the record, including abnormal results in the mental status examinations, showing issues with concentration, irritability, motivation, insight, judgment, and impulse control.  However, the ALJ specifically acknowledged that the objective medical evidence contained such findings but found that this evidence was outweighed by findings showing normal functioning. (R. 18-19, 21, 23-26, 29).  Likewise, Plaintiff argues that the ALJ downplayed blended case manager Wendy Ewing's observations that Plaintiff struggled to function independently, but again, the ALJ clearly acknowledged Ms. Ewing's statements, as well as the assistance and encouragement Plaintiff received from others. (R. 18-19, 21, 26, 28, 29).

Plaintiff further contends that the ALJ should have assigned more weight to the opinions of consultative examiners Cynthia Wright, D.Ed., and Tammy Connell, M.A., and of Paul Bensur, Jr., Ph.D., one of her treating mental health providers.  She also suggests that, "[d]espite his comments to the contrary," the ALJ failed to evaluate the medical opinion evidence under 20 C.F.R. §§ 404.1527 and 416.927.  By way of background, in 2017, the SSA amended its regulations in regard to how an ALJ is to evaluate medical opinion evidence, most notably eliminating the "treating physician rule."  *Compare* 20 C.F.R. §§ 404.1527(c)(2) and

2

416.927(c)(2) (applying to cases prior to the amendment of the regulations) *with* 20 C.F.R. §§ 404.1520c(a) and 416.920c(a) (applying to later cases).  *See also* 82 Fed. Reg. 5844-01, at 5853 (Jan. 18, 2017).  Plaintiff is correct that for claims, such as this one, filed before March 27, 2017, the older versions apply, and a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  However, contrary to Plaintiff's contentions, the ALJ did in fact apply Sections 404.1527 and 416.927 when considering the medical opinion evidence here.

Not only did the ALJ expressly cite to Sections 404.1527 and 416.927, he also assigned the various opinions "weight," which was the operative term under the old regulations rather than determining their "persuasiveness" as the new regulations demand.  (R. 20, 27-30).  As for consultative examiners' opinions, the ALJ clearly identified them as consultative examiners and discussed their examination findings at length.  (R. 28-29).  As for Dr. Bensur, the ALJ acknowledged and discussed his treating relationship with Plaintiff.  (R. 30).  Indeed, he specially discussed that Dr. Bensur had seen Plaintiff only five times over five months and that Dr. Bensur himself admitted that this limited treatment made it difficult to offer an assessment.  Plaintiff takes issue with the ALJ's refence to Plaintiff having been referred to Dr. Bensur by her attorney, which she argues is not impermissible.  The Court agrees that there is generally nothing untoward about an attorney referring a client to a health care provider, but that does not mean that the ALJ (or the Court) should have to close their eyes to the reality that findings by doctors referred by attorneys must be scrutinized somewhat more closely.  Regardless, as Defendant points out, that was just one of a number of factors considered by the ALJ in evaluating Dr. Bensur's opinion, including the factors discussed above, as well as the fact that Plaintiff had taken herself off of her medication during the majority of her time treating with Dr. Bensur, the inconsistency of the opinion with other treatment records, and the fact that the opinion relied in part on information that was irrelevant or outside of his treating relationship with Plaintiff.  (*Id.*).

Further, while the ALJ did give more weight to the opinions of the state agency consultants than to those of the consultative examiners and Plaintiff's treating physician, such a determination was permissible even pursuant to the old regulations.  Under Sections 404.1527 and 416.927, an ALJ must consider the treating relationship between a claimant and an opining doctor, but when the medical opinion of a treating source conflicts with that of a non-treating, or even a non-examining physician, "the ALJ may choose whom to credit."  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).  *See also Dula v. Barnhart*, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005).  In certain cases, the ALJ is justified in giving more weight to the non-examining professional's opinion.  *See Salerno v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 208 (3d Cir. 2005) (affirming an ALJ's decision to credit the opinion of the non-examining state agency reviewing psychologist because his opinion was more supported by the record than the opinions of the treating physician and the consultative examiner).  That is the case here, and substantial evidence supports the ALJ's decision to weigh the medical opinions as he did.  As to Plaintiff's contention that the ALJ failed to indicate the weight given to "opinions" from Stairways Behavior Health

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 5) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 8) is GRANTED as set forth herein.

s/Alan N. Bloch<br>United States District Judge

ecf:   Counsel of record

---

and Meadville Behavioral Health, the Court notes that the records at issue do not contain opinions as to Plaintiff's functional capacity that would invoke Sections 404.1527 and 416.927.

Finally, Plaintiff alleges that the ALJ's definition of the term "superficial," as used in the RFC, was neither appropriate nor clear. Specifically, the RFC as crafted by the ALJ limited Plaintiff to "no more than superficial interaction with supervisors or co-workers (no more than 32% of the work day)." (R. 20). Citing a District of New Jersey decision, *Matthew F. v. Kijakazi*, 3:20-cv-15564, 2022 WL 1442243 (D. N.J. May 6, 2022), Plaintiff states that his definition was more akin to the proper definition for the term "occasional," and that there is not just a quantitative but a qualitative difference between those terms. However, Plaintiff overlooks the fact that, regardless of whether the ALJ's definition of "superficial" was a good one, it was one commonly understood by the parties and the vocational expert ("VE") because the ALJ expressly defined what he meant in using the term. This is not like in *Matthew F.*, where the ALJ defined superficial in a way arguably different than would be understood by the medical provider who had opined to that limitation and whose opinion the ALJ had found to be persuasive. Instead, the ALJ here himself chose the term "superficial" and defined it as "no more than 32% of the workday." (R. 20). He defined the term the same way in questioning the VE. (R. 120). Plaintiff herself admits that this is how the VE would have understood the term. (Doc. No. 6, p. 27). Therefore, it does not matter whether the term "occasional" more accurately fits the definition given by the ALJ – all understood "superficial," in this particular case, to mean contact no more than 32 percent of the work day.

The United States Supreme Court has reminded us that **the threshold for meeting the substantial evidence standard "is not high."** *Biestek*, 139 S. Ct. at 1154. The Court finds that the ALJ applied the correct legal standards and that substantial evidence supports his decision. It will therefore affirm.